24-1643
*St. Joseph's Hospital Health Center v. American Anesthesiology of Syracuse, P.C.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> GERARD E. LYNCH,
> BETH ROBINSON,
> *Circuit Judges*.

_____

ST. JOSEPH'S HOSPITAL HEALTH CENTER,

> *Plaintiff-Counter-Defendant-Appellee*,

> v.                                                    24-1643

AMERICAN ANESTHESIOLOGY OF SYRACUSE, P.C., AMERICAN ANESTHESIOLOGY, INC., NMSC II, LLC., NORTH AMERICAN PARTNERS IN ANESTHESIA, LLP,

> *Defendant-Counter-Claimants-Appellants*.

_____

For Plaintiff-Counter-Defendant-Appellee:       DAVID A. ETTINGER, Honigman LLP, Detroit Michigan (John F. Queenan, Rivkin Radler LLP, Albany, NY, *on the brief*).

For Defendant-Counter-Claimants-Appellants: WILLIAM MAYER KATZ, JR., Holland & Knight LLP, Dallas, TX (Dina McKenney, Holland & Knight LLP, Dallas, TX, and Scott O'Connell, Holland & Knight LLP, Boston MA, *on the brief*).

Appeal from an order of the United States District Court for the Northern District of New York (Sannes, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Defendant-Counter-Claimants-Appellants American Anesthesiology of Syracuse, P.C., American Anesthesiology, Inc., NMSC II, LLC, and North American Partners in Anesthesiology, LLP (collectively, "NAPA") appeal from a May 16, 2024 order of the district court, denying their motion for a preliminary injunction. Plaintiff-Counter-Defendant-Appellee St. Joseph's Health Center ("St. Joseph's"), a 431-bed nonprofit hospital in Syracuse, New York, entered into a contract with NAPA (the "Agreement") under which NAPA, the largest anesthesia services provider in North America, would be the exclusive provider of anesthesia care at St. Joseph's. The Agreement contains a non-solicitation provision that prohibits St. Joseph's from inducing or hiring any NAPA employee until two years after the Agreement terminates. In late 2023, St. Joseph's informed NAPA that it would not be renewing the Agreement when it expired on July 1, 2024. The parties attempted to negotiate new contract terms or, alternatively, a buyout of the non-solicitation clause. When these negotiations proved unsuccessful, St. Joseph's initiated this action seeking a declaratory judgment that the Agreement's non-solicitation provision is unenforceable under New York law and alleging, *inter alia*, that NAPA violated federal and state antitrust laws. On the same day it filed its complaint and in contravention of the Agreement's non-solicitation provision, St. Joseph's sent offers of employment to the NAPA anesthesia

2

providers working at the hospital, concluding that St. Joseph's would have otherwise been unable to offer critical care to its patients. NAPA filed a counterclaim alleging breach of the Agreement and moved for a preliminary injunction to stop St. Joseph's from soliciting or hiring its employees. On appeal, NAPA argues that the district court abused its discretion by denying its motion for a preliminary injunction and for failing to hold an evidentiary hearing before ruling. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to **AFFIRM**.

## I. Preliminary Injunction

We review a district court's denial of a preliminary injunction for abuse of discretion. *Res. Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107, 114 (2d Cir. 2024). "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Warren v. Pataki*, 823 F.3d 125, 137 (2d Cir. 2016) (quoting *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009)).

"A preliminary injunction is an extraordinary and drastic remedy" and "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Practice P.C.*, 120 F.4th 59, 79 (2d Cir. 2024) (internal quotation marks and citation omitted). To obtain a preliminary injunction, a party must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest."[1] *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883

---

[1] St. Joseph's argues that NAPA should be held to the higher preliminary injunction standard we have applied in cases "where the injunction being sought will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Yang v. Kosinski*, 960 F.3d 119, 127-

F.3d 32, 37 (2d Cir. 2018). "The irreparable harm requirement is the single most important prerequisite for the issuance of a preliminary injunction" and "must therefore be satisfied before the other requirements for an injunction can be considered." *State Farm*, 120 F.4th at 80 (internal quotation marks and citations omitted).

To establish irreparable harm, the moving party must show an "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020) (internal quotation marks and citation omitted). Monetary "compensation need only be 'adequate' for preliminary relief to be unwarranted, not perfect." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 358 (2d Cir. 2024). NAPA alleges that without an injunction, it will be irreparably harmed by lost "customer relationships," lost opportunity costs, the loss of their trained clinicians, and reputational harm. NAPA Br. at 44; *see also id.* at 44-53. We agree with the district court that on this record none of these alleged harms are sufficient to entitle NAPA to a preliminary injunction.

NAPA's contention that it will be harmed by losing established "customer" relationships (i.e., those between NAPA clinicians and the other medical providers at St. Joseph's) misunderstands the sort of relationships that can be the source of irreparable harm. We have found sufficient injury where "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999). Even accepting NAPA's assertion that the other medical providers at St. Joseph's are their

---

28 (2d Cir. 2020) (internal quotation marks omitted). Because we agree with the district court that NAPA would not be entitled to a preliminary injunction under either standard, we assume without deciding that the lesser standard applies here.

customers, it is undisputed that anesthesia providers are assigned their patients by the hospital itself, not these other doctors. And nothing in the record suggests that the physicians at St. Joseph's performing procedures requiring anesthesia can request to work with a particular NAPA clinician. The relationships NAPA employees have with other providers at St. Joseph's thus do not generate any business for NAPA, let alone "an indeterminate amount of business" that would make calculating monetary damages difficult. *Id.*

NAPA's argument that it will suffer lost opportunity costs without an injunction is similarly unavailing. NAPA pins its argument entirely on one declarant who attests that "NAPA intends to reassign . . . clinicians to other nearby facilities after the termination of the Agreement" and that in the past, NAPA has "tried to reassign providers" to another hospital on days when St. Joseph's "anesthesia ha[d] excess capacity." Joint App'x 271. NAPA also claims, without citation to the record, that the loss of its clinicians may force it to breach contracts to provide anesthesia services at other facilities in the area due to a general lack of capacity. The district court did not abuse its discretion in concluding that nonspecific references to reassigning personnel and speculative claims about breaching unidentified contracts are not the sort of "actual and imminent" injury sufficient to justify a preliminary injunction. *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 37-38 (2d Cir. 1995).

NAPA next claims that it will suffer irreparable injury without an injunction because it provides proprietary training and confidential information to its clinicians. Specifically, NAPA trains its chief clinicians on "best practices in terms of operating room efficiency, inclusion, problem resolution, and culture building" and gives employees access to a "proprietary clinical outcome database" and "Anesthesia Risk Alerts," which "provide the clinicians with real-time data driven analysis and best practices." Joint App'x 338-39. We have never held that the loss of an

employee who receives any training from their employer or access to proprietary information necessarily constitutes irreparable harm. District courts have relied on employee training in some cases, but only when the training in question provided the departing employees the ability to unfairly compete with their former employer. *See, e.g.*, *Natsource LLC v. Paribello*, 151 F. Supp. 2d 465, 469 (S.D.N.Y. 2001) (concluding that a brokerage firm that "expends substantial resources to help its brokers develop customer relations . . . . by providing market intelligence" would be irreparably harmed by an employee's departure in part because "[t]he loss of training and interference with already established relationships . . . [we]re unquantifiable assets"). The district court did not abuse its discretion in concluding that money damages would be adequate to compensate NAPA for any harm caused by departing clinicians where the training in question and confidential information related only to the general provision of care and did not make the employees' services unique. *See Ticor*, 173 F.3d at 70 ("Services that are not simply of value to the employer, but that may also truly be said to be special, unique or extraordinary may entitle an employer to injunctive relief.").

We also agree with the district court that NAPA's theory of reputational harm is "speculative, conclusory, and unsupported by facts in the record." *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, No. 5:24-cv-276, 2024 WL 3093542, at *6 (N.D.N.Y. May 16, 2024). NAPA contends that St. Joseph's actions have caused its clinicians to become "afraid and concerned about their future employment" and led potential recruits to "rethink their commitments to join [NAPA]." Joint App'x 91-92. But these comments, offered in the context of expressing concern about clinician wellbeing and patient care at St. Joseph's, do not show that these current and future NAPA employees came to think less of NAPA as a result of St. Joseph's actions. The district court did not abuse its discretion in concluding the record did not support a

finding of reputational harm. *See Baker's Aid v. Hussman Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) ("We are especially loath to find an abuse of discretion in the instant situation, given the district court's factual findings and plaintiff's failure to produce any evidence of irreparable harm, other than [a] conclusory statement.").

At bottom, we agree with the district court that NAPA failed to meet its burden of demonstrating any "actual and imminent" harm that could not "be remedied by an award of monetary damages." *New York*, 969 F.3d at 86 (internal quotation marks and citation omitted); *see also JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("It is settled law that when an injury is compensable through money damages there is no irreparable harm."). Because NAPA has failed to show that it will suffer irreparable harm, we do not consider its arguments as to the other preliminary injunction factors. *See State Farm*, 120 F.4th at 80 ("[Irreparable harm] must therefore be satisfied before the other requirements for an injunction can be considered."); *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 120 (2d Cir. 2009) (concluding that "there was no basis for the entry of a preliminary injunction" when there was no showing of irreparable harm).

## II.    Evidentiary Hearing

NAPA also argues that the district court abused its discretion by ruling on its motion for a preliminary injunction without holding an evidentiary hearing. We disagree. "[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations,* 107 F.3d 979, 984 (2d Cir.1997) (internal quotation marks and citations omitted). A hearing is not required for a preliminary injunction "when the relevant facts either are not in dispute or have been clearly demonstrated at prior stages

7

of the case, or when the disputed facts are amenable to complete resolution on a paper record." *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (citation omitted). We review a district court's decision not to hold such an evidentiary hearing for abuse of discretion. *Zappia Middle East Const. Co. Ltd. V. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). NAPA has not identified any factual dispute in the record that was essential to the district court's decision. Accordingly, the district court did not abuse its discretion in deciding that the record before it was sufficient to decide the motion without a hearing.

\*     \*     \*

We have considered NAPA's remaining arguments and conclude that they are without merit. For the foregoing reasons, the order of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk